# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| AYANNA McELRATH, et al., | ) | CASE NO. 1:16 CV 2907 |
| | ) | |
| Plaintiffs, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| vs. | ) | <u>OPINION AND ORDER</u> |
| | ) | |
| CITY OF CLEVELAND, et al., | ) | |
| | ) | |
| Defendants. | ) | |

Before the Court is Defendants' Motion to Dismiss Plaintiffs' Amended Complaint. (Doc #: 13 ("Motion").) Plaintiffs Ayanna McElrath and her daughter, LaCretia McElrath, representing themselves, have sued the City of Cleveland and Individual Police Officers for various federal and state claims arising from their arrest in front of the Westtown Square Shopping Center in Cleveland, Ohio on December 4, 2015. The Court has reviewed the Motion, the Opposition Brief (Doc #: 18 ("Op. Br.")), and the Reply Brief (Doc #: 27 ("Reply")). As will be seen below, the Court **grants in part and denies in part** the pending Motion.

**I.**

The following factual allegations are taken from the Amended Complaint and Plaintiffs' Opposition Brief, and are construed as true for purposes of a motion to dismiss. *See Shoup v. Doyle*, 974 F. Supp. 2d 1058, 1071 (S.D. Ohio 2013) (citing *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012).

On or about December 4, 2015, Plaintiff LaCretia McElrath (hereafter, "LaCretia") inadvertently pulled into a handicap parking space in front of a store at the Westtown Square Shopping Center at 10950 Lorain Ave. in Cleveland, Ohio. (Doc #: 4 ("Am. Comp.") ¶ 7.) An unidentified officer approached her asking if she knew she was in a handicap parking space to which she responded yes, she was pulling out. (Id.) He then allowed her to back up. (Id.)

Then, Cleveland Police Officer Charles Judd came along and jumped out of his squad car yelling, "You're getting a ticket." (Am. Comp. ¶ 8.) LaCretia, who is a Muslim, immediately recognized Officer Judd as someone who had repeatedly called her a "raghead" in an off-duty incident. (Id.) When he asked her for her ID, she asked if she could speak with his partner or supervisor due to her concerns about his animus. (Id.) He told her that there was no one else to talk to and if he had to call his supervisor, "you will get arrested." (Id.) LaCretia thus presented her ID to Officer Judd through a barely open window. (Id.) When Officer Judd returned, he told her that she was going to be arrested for driving under suspension. (Id.) He did not tell her that he was also charging her with felony failure-to-comply. (Opp. Br. at 4.) Following this, there was a moment of peaceful dialogue during which she was asked for her insurance information and she went through her paperwork.

This is when Officers Renee Collins and Troy White arrived at the scene. (Am. Comp. ¶ 10.) When told to search LaCretia, Officer Collins began searching her aggressively during which LaCretia complained that she was hurting her–to which she replied, that's just what happens when you get arrested, it will all be over soon. (Id.) When LaCretia complained that the handcuffs were too tight, she heard Officer Collins purposely click them to an even tighter position. (Opp. Br. at 4.) When Officer Collins put LaCretia in the squad car, she hit LaCretia's

-2-

head on the door so hard that she passed out. (Id.) Officer Collins then blocked the view of LaCretia, unconscious, in the squad car. LaCretia did not regain full consciousness until she was in the elevator at the city jail. (Id.) She continues to suffer headaches resulting from this incident. (Id.)

Meanwhile, LaCretia's mother, Ayanna McElrath (hereafter, "Ayanna") arrived at the scene just in time to see her daughter forcefully searched, handcuffed, and shoved into the squad car door. When Ayanna approached Officer Collins asking her why she hit her daughter's head on the squad car door, she replied, "I told her to move!" (Am. Comp. ¶ 14.) When Ayanna asked Officer Collins for her badge number, Officer Collins covered her badge and turned away. (Id.)

Concerned for her daughter, Ayanna tried to call EMS on her cell phone, at which point one officer seized her cell phone and three other officers (including Officers Judd and White) held her arms behind her back while Officer Collins attacked her from the front and the officer who seized the cell phone scrolled through it. (Id. ¶ 15.) Anticipating where the situation was headed, Ayanna informed officers that she suffered from epilepsy, which was confirmed by people standing in the ever-growing crowd outside the shopping center. (Id. ¶ 16.) Nonetheless, the officers treated Ayanna with the same kid gloves they treated her daughter–roughly handcuffing her, screaming at her and pushing her into the back of another squad car. (Id. ¶ 17.) Ayanna claims that she suffered a short seizure in the back of the squad car. (Opp. Br. at 4.) Officer Judd refused her request to open a window so she could get some air. (Id.) Minutes later, however, Officer Judd commenced a joyride driving at top speed on the freeway with the windows down in the freezing cold and opening and closing the doors numerous times to taunt

and terrorize her, whose arms were handcuffed leaving her defenseless. (Am. Comp. ¶ 18.) She suffered bruises from the ride, and there was blood on her clothes. (Opp. Br. at 7.) (Id.)

Ayanna and her daughter were both put in a jail cell where they were subjected to freezing temperatures with no heat and no blankets, leaking water, unsanitary and otherwise inhumane conditions. (Am. Comp. at ¶¶ 21, 57.) In court, the judge handling LaCretia's case reduced the felony failure-to-comply charge to driving under suspension. (Opp. Br. at 4.) An attachment to the Opposition Brief suggests that Ayanna was charged with obstructing official business, interfering with police at a traffic stop, and resisting arrest, but the Amended Complaint does not state how those charges were resolved. (Doc #: 18-1 at 42.)

On December 20, 2015, the McElraths went to the Office of Professional Standards ("OPS") to complain about their treatment at Defendants' hands on December 4, 2015. (Am. Comp. ¶ 22.) A person named David Hammons presented himself to them as the OPS representative. When they asked him about the effect of their complaint on the statute of limitations for filing a federal lawsuit, he assured them that the investigation would be handled in a timely manner. The McElraths were never told how their complaint was resolved, prompting them to file this case on December 2, 2016.

Plaintiffs LaCretia and Ayanna, representing themselves, have purported to bring 13 claims against the City of Cleveland, Police Officers Judd, Collins and White, and Sergeants Fitzpatrick and Janell Rutherford.[1] The Court, and apparently the City, have endeavored to decipher the counts asserted in the Amended Complaint. Given the liberal construction the

---

[1] Plaintiffs have incorrectly numbered the 13th claim "Count XII." (Am. Comp. at 16-17.)

Court must give to *pro se* pleadings, the claims identified and discussed *infra*, Section III, appear to represent the entirety of Plaintiffs' claims.

## II.

In reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim, a district court must accept as true all well-pleaded allegations and draw all reasonable inferences in favor of the non-moving party. *Shoup*, 974 F. Supp. 2d at 1071; *Handy-Clay*, 695 F.3d at 538. A court need not, however, credit bald assertions, legal conclusions, or unwarranted inferences. *Kavanagh v. Zwilling*, 578 F. App'x 24, 24 (2d Cir. 2014) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face," and not merely "conceivable." *Twombly*, 550 U.S. at 570. The factual allegations must be sufficient "to raise a right to relief above the speculative level." *Id*. at 555. Although Rule 12(b)(6) does not impose a probability requirement at the pleading stage, a plaintiff must present enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements of a cause of action. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quotation marks omitted). Simply reciting the elements of a cause of action does not suffice. *Iqbal*, 556 U.S. at 678.

## III.

**A. Excessive Force (Count 1)**

Plaintiffs assert that Defendants used excessive force when arresting them, and bring a federal claim for damages under 42 U.S.C. § 1983. Specifically, LaCretia alleges that Officer Collins committed excessive force by purposely tightening her handcuffs after she complained

they were too tight, and by needlessly shoving her head into the squad car door resulting in loss of consciousness and lingering headaches. In recognition of these allegations, Defendants do not ask the Court to dismiss LaCretia's excessive force claim against Officer Collins. (See Doc #: 27 at 3.) But they do ask the Court to dismiss her excessive force claim against the other individual Defendants. Because LaCretia has not alleged that any other officer used excessive force when arresting her, her excessive force claim against all other officers is dismissed.

Defendants have not mentioned, let alone addressed, Ayanna McElrath's excessive force claim. Ayanna alleges that, when she tried to call EMS to come to LaCretia's aid, Officers Judd and White, along with two other officers, forcibly seized her cell phone and held her arms behind her back, after which Officer Collins assaulted her from the front. Ayanna also asserts that Officer Judd refused to open the window after she had a seizure in the back of his squad car and asked him to open it for air. She asserts that Officer Judd also told her that she was being held hostage. Officer Judd, who drove the squad car in which she was handcuffed, rolled the windows down on the freeway in the freezing December weather, opened and closed the doors, and generally terrorized her on the way to the police station – resulting in blood and bruises. Because these allegations, if proven, constitute excessive force, her claim against Officers Judd and Collins remains. The excessive force claim also remains against the yet-identified officers who held her arms behind her back while Officer Collins assaulted her.

**B.  Malicious Prosecution (Count 1)**

The McElraths claim they are the victims of malicious prosecution under federal law. "The Sixth Circuit recognizes a separate constitutionally cognizable claim of malicious prosecution under the Fourteenth Amendment, which encompasses wrongful investigation,

-6-

prosecution, conviction, and incarceration." *Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010) (inner quotations omitted).  To succeed on a malicious-prosecution claim under § 1983, Plaintiffs must show the following: (1) a criminal prosecution was initiated against them and the Defendants made, influenced, or participated in the decision to prosecute; (2) there was a lack of probable cause for the criminal prosecution; (3) as a result of the legal proceeding, Plaintiffs suffered a deprivation of liberty apart from the initial seizure; and (4) the proceeding was resolved in their favor.  *Id.*

Plaintiffs have failed to state a malicious-prosecution claim.  LaCretia McElrath alleges that she was maliciously prosecuted for driving under suspension and refusal to display her license based on the December 4, 2015 incident.  However, the state court docket of her criminal proceeding shows that, on April 5, 2016, she entered pleas of no contest and consented to a finding of guilty to the charges.  (Doc #: 13-1 at 4.)  Consequently, even if the arresting officer made false statements in support of the prosecution, LaCretia's no-contest plea vitiated her malicious-prosecution claim.  *Sykes*, 625 F.3d at 309.  It also appears that Ayanna McElrath was charged with failure to comply, resisting arrest, and obstructing official business.  (Doc #: 18-1 at 42.)  Plaintiffs have failed to allege, however, that the charges against Ayanna were resolved in her favor.  Accordingly, Ayanna's federal malicious-prosecution claim is also dismissed.

**C.     False Reporting  (Count 2)**

Plaintiffs allege that the arresting officers made false reports in connection with their arrests and convictions.  However, they fail to allege the elements of a "false reporting" claim. Even assuming that the arresting officers made false representations that led to their malicious prosecution, the claim is dismissed because (1) LaCretia pled guilty to the charges against her,

and (2) Ayanna failed to allege that her prosecutions resulted in her favor. To the extent Plaintiffs assert that the false representations led to their false imprisonments, the claim is dismissed because Plaintiffs have failed to sufficiently allege that the arresting officers lacked probable cause. (See infra at 12-13.) Accordingly, the false reporting claim is dismissed.

**D.     Municipal Liability  (Counts 3, 4, 10 and 11)**

Plaintiffs allege that it was the policy, practice or custom of the City of Cleveland to inadequately train, supervise, monitor and/or discipline their officers which led to the constitutional violations asserted against them.

A local government is not responsible under § 1983 solely because injuries were inflicted by its employees or agents. *Monell v. Dept. of Soc. Servs. City of New York*, 436 U.S. 658, 694 (1978). Absent an underlying constitutional violation by one of its officers, a municipality cannot be held liable under § 1983. *Diver v. Dobson*, 2014 WL 1369671, at *15 (citing *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 900 (6th Cir. 2004)).

At the same time, a municipality can only be held liable under § 1983 if the plaintiff can show that its civil rights have been violated as a direct result of that municipality's policy or custom. *Id*. (citing *Blackmore*, 390 F.3d at 890, in turn citing *Monell*, 436 U.S. at 694). To succeed on a claim for failure to train, the plaintiff must sufficiently allege that (1) the training program is inadequate to the tasks officers must perform; (2) the inadequacy resulted from the municipality's deliberate indifference; and (3) the deliberate indifference is closely related to or actually caused the plaintiff's injury. *Id*. (citing *Barnes v. City of Toledo*, No. 3:08 CV 2090, 2010 WL 1268044, at *7 (N.D. Ohio Jan. 15, 2010).

Count 3 alleges, among other things, that the City "has a policy of permitting the automatic prosecution of charges alleged by police officers without investigation," "has a policy of favoring the word of a white complainant over that of a black," and "has a policy of training rookie officers on how to make false statements & how to properly intimidate or harass prisoners without any punishment or disciplinary actions."  (Am. Comp. ¶ 38.)

Count 4 alleges that "the actions of the individual police defendants have been with the sanction and approval of the [City] and pursuant to its policy and direction."  (Id. ¶ 44.)

Count 10 alleges, among other things, that the City "knew or should have known that defendant Judd had a history of unprofessional and even violent conduct towards citizens, had a racial animus in her implementation of law enforcement and was otherwise unfit to serve as a training officer for defendant Judd or any other police officer needing additional instruction and direction as to proper police conduct and procedures."  (Id. ¶ 65.)

While a district court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the non-moving party, a court need not credit bald assertions, legal conclusions, or unwarranted inferences.  *Twombly*, 550 U.S. at 555-56 (2007)); *see also Iqbal*, 556 U.S. at 678.  The factual allegations must be sufficient to raise a right to relief above the speculative level.  *Id*. at 555.  The Court finds that Plaintiffs' municipal liability claims contain bald, conclusory assertions that are insufficient to raise a right to relief above the speculative level.  Accordingly, Counts 3, 4 and 10 are dismissed.

In Count 11, Plaintiffs allege that the City is liable for the failure of the OPS to investigate their complaint of police misconduct within a reasonable period of time, and for the City's failure to take action on recommendations of the Police Review Board ("PRB").  This

claim also fails. Plaintiffs do not allege that the PRB made any recommendations with regard to their complaint that the City did not follow. Rather, they allege that they have not heard the resolution of their citizens complaint. Furthermore, Plaintiffs have only alleged a single instance of a failure to investigate, i.e., their own complaint. Municipal liability can be triggered by evidence of a single violation of federal rights only if accompanied by a showing that the municipality "has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation." *Board of the Cty. Comm'rs v. Brown*, 520 U.S. 397, 399 (1997); *Nelson v. City of Madison Hts*, No.13-cv-10632, 2016 WL 8223974 (E.D. Mich. Jan. 19, 2016). Plaintiffs have not provided any prior instances of the OPS' failure to investigate police misconduct that would suggest a city-wide policy. Plaintiffs have also failed to assert any facts showing that the City's alleged failure to investigate police misconduct emanates from deliberate indifference. They must plead more than the absence of an adequate and proper investigation due to negligence.

Defendants correctly note that Plaintiffs generally use the term "conspiracy" throughout the Amended Complaint. (See, e.g., Am. Comp. ¶ 73.) To prevail on a § 1983 civil conspiracy claim, Plaintiffs must show (1) a single plan existed; (2) Defendants "shared in the general conspiratorial objective" to deprive Plaintiffs of their constitutional rights, and (3) an overt act was committed in furtherance of the conspiracy that caused Plaintiffs' injuries. *Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir. 1985). Conspiracy claims must be pled with some degree of specificity; vague or conclusory allegations unsupported by material facts are insufficient to state such claim. *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003) (citation omitted). Plaintiffs' loose use of the term "conspired" is plainly insufficient to state a § 1983 civil conspiracy claim.

-10-

### E. Ohio Constitution Claim (Count 5)

Plaintiffs also bring claims for excessive force and malicious prosecution under the Ohio constitution. But there is no private cause of action for damages under the Ohio Constitution. *Williams v. Nice*, 58 F.Supp.3d 833, 839-40 (N.D. Ohio 2014). The Ohio Supreme Court "has refused to recognize a private cause of action for violations of the Ohio Constitution when it is determined that there are adequate remedies provided by statute or administrative process." *Id.* at 839 (quoting *Provens v. Stark Cnty. Bd. of Mental Retardation & Developmental Disabilities*, 64 Ohio St.3d 252, 261, 594 N.E.2d 959 (1992)). Furthermore, Ohio constitutional claims must be dismissed "unless [42 U.S.C.] § 1983 is proven to be an inadequate remedy." *Id.*; *see also PDU, Inc. v. City of Cleveland*, No. 81944, 2003 WL 21555157, at *3 (8th Dist. Cr. App. Jul. 10, 2003) and *Ware v. Sanderson*, No. 2013 WL 587583, at *3 (N.D. Ohio Feb. 13, 2013). Since no argument has been made that § 1983 is an inadequate remedy, this count is dismissed.

### F. Assault and Battery (Count 6)

Plaintiffs allege that Officers Judd, Collins, White and Fitzpatrick committed an assault and battery on their persons when arresting them. An assault is the willful threat to harm or touch another offensively, which threat or attempt reasonably placed the other in fear of such contact, coupled with a definitive act by one who has the apparent ability to do the harm or commit the offensive touching. *Smith v. John Deere*, 83 Ohio App.3d 398, 406 (1993). To be liable for battery, the defendant must know with certainty that the act in which he is engaging will bring about harmful or offensive contact. *Id.*

As with the federal excessive force claim, LaCretia has sufficiently stated assault and battery against Officer Collins. Not only does she allege that Officer Collins purposely tightened

her handcuffs after she complained, but she alleges that Officer Collins pushed her into the squad car door so hard that she lost consciousness for a significant period of time after which Officer Collins blocked the window to prevent anyone from seeing her out cold in the back of the car and hid her badge number from LaCretia's mother when she asked for it. While an officer may use a reasonable amount of force in effecting an arrest, the allegations, if proven, show that Officer Collins used an unreasonable amount of force and purposely harmed LaCretia while arresting her. Accordingly, this claim is not dismissed as to Officer Collins, but it is dismissed as to other Defendants.

For the same reason, Ayanna's claim against Officer Judd, Officer Collins, and the other officers who allegedly held her arms behind her back while Officer Collins assaulted her is not dismissed. The allegations, if proven, show that Officer Collins assaulted and battered her from the front when she was defenseless, and that Officer Judd used his car to terrorize and harm her (and did so successfully) when racing to the jail on the freeway. Accordingly, the motion to dismiss Ayanna's assault and battery claims against Officers Judd, Collins and yet-identified officers is denied.

### G.  False Imprisonment  (Count 7)

Plaintiffs allege that "Defendants falsely imprisoned [them] within the Cleveland police vehicle and in the city jail for which they are liable under state law."  (Am. Comp. ¶ 53.) Furthermore, because the individual defendants are employees of the City, their acts "are imputed to the City."  (Id. ¶ 55.)

Under Ohio law, a guilty finding in a criminal proceeding, whether by trial or plea, constitutes an absolute defense to an action for false imprisonment. *Walker v. Schaeffer*, 854

F.2d 138, 143 n.1 (6th Cir. 1988) (quoting 45 Ohio Jur. 3d. False Imprisonment § 10), and citing *Ryan v. Conover*, 59 Ohio App. 361 (1938)). LaCretia pled guilty to driving under suspension; thus, her false imprisonment claim is dismissed. And Ayanna does not articulate how the charges against her were resolved; thus, her false imprisonment claim is also dismissed. Because the false imprisonment claim fails against the individual Defendants, it is unnecessary to address false imprisonment against the City.

## H. Jail Conditions (Count 8)

Plaintiffs allege that, as a result of their "nearly twenty-four hours in a jail facility," they were unconstitutionally subjected to freezing temperatures with no heat and no blankets, leaking water, unsanitary and otherwise inhumane conditions. Unconstitutional conditions-of-confinement claims are analyzed under the Eighth Amendment deliberate-indifferent standard for cruel and unusual punishment. *Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991). Deliberate indifference has two components: (1) objectively, the constitutional deprivation must be sufficiently serious, and (2) subjectively, the government official must disregard a known or obvious risk. *Id*. The objective component requires a significant injury, while the subjective component anticipates only extreme deprivations. *Id*.

Plaintiffs have not articulated a specific, significant injury they suffered as a result of their confinement sufficient to satisfy the objective component of an Eighth Amendment claim. For example, one district court has concluded that housing a plaintiff close to an inmate who has AIDS or tuberculosis did not state an Eighth Amendment claim because the plaintiff did not allege that he contracted the disease as a result. *Stone-El v. Sheaham*, 914 F.Supp. 202, 206 (N.D. Ill. 1995). With regard to the subjective component, that court also found that filthy

showers and restrooms, lack of toilet paper and clean clothes was insufficiently serious to satisfy the subjective component of an Eighth Amendment claim.  *Id*.  *See also Dellis v. Corrections Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (holding that a flooded jail cell and malfunctioning toilet were only temporary inconveniences).

Thus, while the Court certainly does not find Plaintiffs' allegations frivolous, the Court concludes that they do not state an Eighth Amendment claim.

**I.     Emotional Distress  (Count 9)**

Count 9 alleges that "[t]he above described conduct of Defendants constituted negligent, reckless and intentional infliction of emotional distress upon both Plaintiffs."  (Am. Comp. ¶ 61.)  That's it.

**1.     Intentional Infliction of Emotional Distress**

"Under Ohio law, a claim of intentional infliction of emotional distress requires (1) extreme and outrageous conduct; (2) of intentional or reckless character; and (3) that causes severe emotional distress."  *Spence v. Donahoe*, 515 F. App'x 561, at **12 (6th Cir. 2013) (citation omitted).  Furthermore, "serious emotional distress" must be "severe and debilitating." *Kovac v. Superior Dairy, Inc.*, 930 F.Supp.2d 857, 870 (N.D. Ohio 2013).  This claim fails for several reasons.  To begin, Plaintiffs do not even allege the elements of an intentional infliction of emotional distress claim.  Furthermore, while they allege that Defendants used excessive force in arresting them and they suffered physical harm, they do not allege that Defendants employed excessive force upon them *with the intent to cause emotional harm*.  They also do not allege that they suffered "severe and debilitating" emotional distress.  Accordingly, this claim is dismissed.

### 2. Negligent Infliction of Emotional Distress

To state a claim for negligent infliction of emotional distress, a plaintiff must allege that (1) she was a bystander to an accident, (2) she reasonably appreciated the peril of the accident, and (3) she suffered serious and foreseeable emotional distress as a result of that recognition or fear of the peril.  There is no allegation that LaCretia was a bystander to an accident, she appreciated the peril of the accident, or that she suffered serious and foreseeable emotional distress as a result.  Accordingly, her claim for negligent infliction of emotional distress is dismissed.

Defendants have represented that the pending Motion does not address Ayanna McElrath's negligent infliction of emotional distress claim–based, presumably, on her witnessing Officer Collins slamming her daughter's head into the squad car door . (See Motion at 1, n.1.) Accordingly, that claim is not dismissed.

### J. Citizen Complaint  (Count 12)

In Count 12, Plaintiffs allege that they are "entitled to know the nature and extent of the discipline imposed upon their offending police officer employees." (Am Comp. ¶ 76.)  They allege, with respect to Officers Judd, Collins, and White, and Sergeants Rutherford and Fitzpatrick, that they are entitled to be notified, in writing, of the final disposition of [their] complaint against said officer[s], including the exercise of Police Review Board authority to impose such discipline when the Chief of Police failed or refused to implement a Police Review Board recommendation that discipline was proper and appropriate." (Id.)

Plaintiffs have not pointed to a statute or case law giving rise to this claim.  Furthermore, they allege that they have not been informed of how their complaint was resolved, so they are

-15-

unable to state what the Police Review Board's recommendation was and that the Chief of Police ignored that recommendation.  Thus, this claim is also dismissed.

**K.     Loss of Consortium   (Count 13)[2]**

And finally, Count 13 alleges, "As a proximate result of [Defendants' misconduct], plaintiff LaCretia has been denied her mother's services, companionship, [and] support . . . upon which [s]he was dependent."  (Am. Comp. ¶ 80 (edited).)  The Sixth Circuit has explained that, not only does a claim for loss of consortium depend upon the defendant having committed a legally cognizable tort upon a family member, but the family member must suffer *bodily injury*. *Collins v. National Union Fire Ins. of Pgh., Pa, Inc.*, No. 2:08 CV 108, 2009 WL 2145910, at *9 (S.D. Ohio Jul. 13, 2009) (citing *Campbell v. PMI Food Equip. Group, Inc.*, 509 F.3d 776, 791 (6th Cir. 2007), in turn citing *Bowen v. Kil-Kare, Inc.*, 63 Ohio St.3d 84, 585 N.E.2d 3824, 392 (1992)).  Moreover, an Ohio court has held that emotional distress does not qualify as bodily injury for loss-of-consortium purposes.  *Id*. (citing *Cunningham v. Hildebrand*, 142 Ohio App.3d 218, 755 N.E.2d 384, 393 (2001)).

Assuming she suffered bodily injury, LaCretia has failed to articulate how she lost her mother's services.  Accordingly, the loss of consortium claim is also dismissed.

**IV.**

In sum, the remaining claims following the resolution of this Motion are LaCretia McElrath's excessive force and assault and battery claims against Officer Collins, and Ayanna McElrath's federal excessive force and assault and battery claims against Officers Collins and Judd and yet-identified Defendants.  Also remaining is Ayanna McElrath's negligent infliction

---

[2]This claim is inaccurately identified as Count 12; but Count 12 alleges a different claim.

of emotional distress claim.  For the reasons previously explained, all other claims are hereby dismissed.

**IT IS SO ORDERED.**

                          **/s/ Dan A. Polster     July 26, 2017**
                          **Dan Aaron Polster**
                          **United States District Judge**